UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID HINTON,

                   Plaintiff,                                              Hon. Janet T. Neff

v.                                                         Case No. 1:10-CV-667

COMMISSIONER OF SOCIAL
SECURITY,

                   Defendant.
_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security granting in part and denying in part Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 45 years of age as of the date his insured status[1] expired. (Tr. 16, 23, 26). He successfully completed high school, as well as two years of college, and worked previously as a cook and laborer. (Tr. 85-91, 268-72, 268).

Plaintiff applied for benefits on July 25, 2005, alleging that he had been disabled since April 4, 2004, due to fibromyalgia, diabetes, muscle and bone deterioration, asthma, and high blood pressure. (Tr. 15, 58, 265). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 25-58). On September 18, 2007, Plaintiff appeared before ALJ Sally Reason, with testimony being offered by Plaintiff and vocational expert, Ronald Hatakeyama. (Tr. 263-93).

In a written decision dated February 4, 2008, the ALJ determined that Plaintiff became disabled as of September 13, 2006. (Tr. 16). Accordingly, Plaintiff's claim for Supplemental Security Income benefits was approved, but his claim for Disability Insurance Benefits was denied because he did not become disabled until after the expiration of his insured status. The Appeals Council declined to review the ALJ's determination, rendering it the

---

[1] Plaintiff's insured status expired on June 30, 2005. (Tr. 16). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Commissioner's final decision in the matter.  (Tr. 5-8).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

### RELEVANT MEDICAL HISTORY

Treatment notes dated December 22, 2004, indicate that Plaintiff was diagnosed with "generalized pain" for which he was prescribed 100 Vicodin tablets.  (Tr. 111).  The record also indicated that Plaintiff's diabetes was "controlled."  (Tr. 111).

X-rays of Plaintiff's chest, taken on February 25, 2005, were "negative."  (Tr. 156).  On March 24, 2005, Plaintiff reported that he was experiencing pain in his back, neck, elbows, shoulders, and feet, and that it was "really hard for him to function."  (Tr. 123).  On April 7, 2005, Plaintiff participated in an exercise stress test, the results of which were "normal."  (Tr. 152).

On July 26, 2005, Plaintiff reported to the Emergency Room complaining of "shortness of breath."  (Tr. 144-45).  A respiratory examination revealed "decreased breath sounds" and "expiratory wheezes throughout" but "no chest wall tenderness."  (Tr. 144).  An examination of Plaintiff's back revealed "mild tenderness on palpation of the thoracic spinous muscles."  (Tr. 144).  Plaintiff exhibited "full range of motion" in his extremities with no evidence of clubbing, cyanosis or edema.  (Tr. 145).  Plaintiff exhibited no evidence of neurologic impairment and his mood and affect were "normal."  (Tr. 145).  Chest x-rays were "normal" with "no evidence of any cardiopulmonary disease."  (Tr. 150).  Plaintiff was treated with inhalers and nitroglycerin which "rendered his discomfort from six to four."  (Tr. 145).  Plaintiff's "discomfort did not fully alleviate with nitroglycerin until he received morphine."  (Tr. 145).  Plaintiff was diagnosed with "bronchitis and brochospasm and chest pain" and "was discharged in stable and improved condition."  (Tr. 145).

Treatment notes dated August 1, 2005 indicate that Plaintiff was scheduled to participate in aqua therapy. (Tr. 118). Treatment notes dated August 9, 2005 indicate that Plaintiff canceled his aqua therapy appointment. (Tr. 118).

On August 16, 2005, Plaintiff participated in a total body bone scan the results of which were "normal." (Tr. 131). On August 29, 2005, Plaintiff participated in a renal ultrasound examination the results of which were "normal." (Tr. 128).

On December 16, 2005, Plaintiff was examined by Physician's Assistant D. Wilkins. (Tr. 231-32). Plaintiff reported that he was experiencing pain and numbness. (Tr. 231). Plaintiff was administered an injection of Toradol. (Tr. 232). Between February 7, 2006 and July 28, 2006, Physician's Assistant Wilkins administered to Plaintiff five additional Toradol injections. (Tr. 217-18, 221-22, 225-30).

On July 20, 2006, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed degenerative changes with no evidence of disc herniation or spinal canal stenosis. (Tr. 233-34).

On September 13, 2006, Plaintiff was examined by Dr. David Krencik. (Tr. 180-82). Plaintiff reported that he was experiencing pain in "the whole body." (Tr. 180). Plaintiff rated his pain as 7/10 at "best" and "10/10" at its "worst." (Tr. 180). Plaintiff stated that his pain is "due to fibromyalgia and diabetes" and that his pain is "increased with any movement." (Tr. 180). Plaintiff's gait was described as "smooth but very slow with obvious pain behaviors." (Tr. 181). The doctor also noted that Plaintiff "is slow to stand erect but does not use his hands to push himself up." (Tr. 181). Plaintiff's peripheral pulses were "intact" and he was able to heel and toe walk "without difficulty." (Tr. 181). A fibromyalgia examination revealed that Plaintiff was "tender" at

5

only eight of the 18 fibromyalgia trigger points.  (Tr. 181).  Dr. Krencik concluded that Plaintiff "does not meet the physical findings for fibromyalgia."  (Tr. 181).  The doctor also noted that Plaintiff was presently taking a "significant amount of pain medication" including "strong opiates like methadone" which "are not a primary treatment of" fibromyalgia.  (Tr. 181).  The doctor recommended to Plaintiff that he increase his activity level as "this is the primary, number one, treatment for fibromyalgia that has been shown to work."  (Tr. 182).

Plaintiff received another Toradol injection on September 28, 2006.  (Tr. 213-14).  On October 11, 2006, Plaintiff requested that Dr. Krencik increase his pain medication.  (Tr. 178-79).  The doctor instead provided Plaintiff with a cervical epidural steroid injection and again urged Plaintiff to stop smoking and participate in physical therapy.  (Tr. 178).  On February 8, 2007, Plaintiff reported to Dr. Krencik that he was "unhappy" because his methadone dosage was not increased. (Tr. 176).  The doctor noted that Plaintiff received "significant relief" with a recent nerve root injection.  (Tr. 176-77).

Treatment notes dated April 5, 2007 indicate that Plaintiff's methadone dosage had been recently increased.  (Tr. 175).  On May 3, 2007, Plaintiff was examined by Dr. Krencik.  (Tr. 173-74).  Plaintiff reported that he was experiencing back pain which radiated into his lower extremities.  (Tr. 173).  The doctor noted that "even with the increased dose of methadone, [Plaintiff] is complaining of more pain, not less." (Tr. 173).  Plaintiff walked "with a shuffling gait." (Tr. 173).  Straight leg raising was negative and an examination of Plaintiff's knees revealed no evidence of crepitance.  (Tr. 173).  An examination of Plaintiff's large and small joints revealed "no evidence of inflammation or effusion."  (Tr. 173).  On May 31, 2007, Plaintiff reported to Dr. Krencik that his back, neck, and leg pain all rated 10/10.  (Tr. 172).

6

On December 6, 2007, Plaintiff participated in a consultive examination conducted by Dr. Donald Sheill.  (Tr. 238-49).  Plaintiff reported that he was experiencing fibromyalgia, diabetes, muscle and bone deterioration, asthma, and hypertension, but that fibromyalgia was "his primary limiting issue."  (Tr. 238).  Plaintiff reported that "he tried therapy," but has since "abandoned efforts to remain active."  (Tr. 238).  An examination of Plaintiff's hands revealed no evidence of atrophy, swelling, or deformity and Plaintiff exhibited "intact" fine and gross dexterity.  (Tr. 239).  Tinel's sign was negative.  (Tr. 239).  An examination of Plaintiff's spine revealed that it was "straight without deformity."  (Tr. 239).  A sensory examination of Plaintiff's lower extremities was unremarkable "except the feet where it is moderately reduced."  (Tr. 239).  An examination of Plaintiff's knees was "positive for mild synovial thickening and mild crepitation with no focal tenderness except that found with fibromyalgia."  (Tr. 239).  Plaintiff was able to ambulate "at a moderate pace."  (Tr. 239).  A fibromyalgia examination revealed "symmetric upper and lower body tenderness not only in the typical fibromyalgia points but also more generalized."  (Tr. 239).  The doctor diagnosed Plaintiff with "severe" fibromyalgia, diabetes "with end organ damage," asthma, hypertension, and "other health issues."  (Tr. 239).  The doctor also diagnosed Plaintiff with "deterioration of muscles and bones," but noted that he "was unable to uncover any specific disorder" to account for such.  (Tr. 239).

Dr. Sheill also completed a report regarding Plaintiff's ability to perform physical activity on a regular and continuous basis defined as "eight hours a day, four to five days a week, or an equivalent work schedule."  (Tr. 244).  The doctor reported that Plaintiff can continuously lift up to 10 pounds, occasionally lift 11 to 20 pounds, but can never lift more than 20 pounds.  (Tr. 244).  The doctor reported that during an eight hour work day Plaintiff can sit, stand, and walk for

two hours each.  (Tr. 245). The doctor reported that Plaintiff required a cane to ambulate and could walk only 50 feet without a cane.  (Tr. 245).  The doctor reported that Plaintiff can occasionally use his hands to perform reaching activities and can frequently use his hands to perform handling, fingering, feeling, pushing/pulling activities.  (Tr. 246).  The doctor reported that Plaintiff can frequently use his feet to operate foot controls.  (Tr. 246).  The doctor concluded that these limitations were first present "three years" previous.  (Tr. 249).

## ANALYSIS OF THE ALJ'S DECISION

Plaintiff's insured status expired on June 30, 2005.  The ALJ concluded that Plaintiff was entitled to Supplemental Security Income benefits because he was disabled beginning September 13, 2006.  The ALJ denied Plaintiff's Disability Insurance Benefits claim, however, because he failed to establish that he was disabled prior to the expiration of his insured status.

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from fibromyalgia, diabetes, generalized back pain, fatigue, and nausea, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 18-20).  With respect to the time period preceding the expiration of Plaintiff's insured status, the ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations.  (Tr. 20-26).  Accordingly, the ALJ concluded that Plaintiff was not entitled to Disability Insurance Benefits.

8

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[2]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

        With respect to Plaintiff's residual functional capacity, the ALJ determined that prior to the expiration of his insured status, Plaintiff retained the capacity "to perform light work not involving exposure to environmental irritants such as dust, fumes, smoke, etc." (Tr. 20). Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

        At the administrative hearing, the ALJ questioned a vocational expert concerning Plaintiff's ability to perform work consistent with his RFC as it existed prior to the expiration of his insured status. The vocational expert testified that prior to the expiration of Plaintiff's insured status, there existed approximately 18,400 jobs in the local economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 287-89). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

a.      Dr. Sheill's Opinion

At the conclusion of the administrative hearing, the ALJ stated that she would arrange for Plaintiff to participate in a consultive examination.  (Tr. 292).  This examination was conducted by Dr. Sheill on December 6, 2007, more than twenty-nine (29) months after the expiration of Plaintiff's insured status.  As detailed above, Dr. Sheill concluded that Plaintiff's then present ability to perform work activities was significantly limited.  The doctor also concluded that Plaintiff had been limited to this extent for the previous three years.  Plaintiff argues that the ALJ erred by failing to adopt Dr. Sheill's opinion that Plaintiff's limitations as of December 6, 2007, had been in existence since before the expiration of his insured status.

At the outset, it must be noted that because Dr. Sheill examined Plaintiff on only one occasion he is not considered a treating physician.  The treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once."  *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006).  When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered.  As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again.  The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

11

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07. Accordingly, Dr. Sheill's opinion is not entitled to any special deference or consideration.

The ALJ discussed at length the results of Dr. Sheill's examination of Plaintiff. (Tr. 19-20). In fact, the ALJ adopted Dr. Sheill's findings with respect to Plaintiff's RFC beginning on September 13, 2006. (Tr. 23). The only difference between the conclusions reached by Dr. Sheill and the ALJ is the date on which the limitations recognized by Dr. Sheill were first in effect. With respect to this particular difference in opinion, the ALJ discussed why she found that the limitations in question were not in effect until September 13, 2006. Specifically, the ALJ observed:

> Prior to September 13, 2006, there is no credible evidence of regular usage of strong medication to alleviate pain which would have significantly impaired the claimant's ability to do basic work activities and no evidence in the medical record of any significant side effects. Although the claimant indicated that he was able to perform only very limited daily activities, the great weight of the evidence showed that, prior to September 13, 2006, he was at least capable of performing the general activities of daily living. Thus, although the claimant does have medically determined impairments which could be expected to produce some pain, the intensity and persistence of the pain alleged by the claimant, at least prior to September 13, 2006, appears exaggerated. Because the claimant's allegations of disability due to pain are based primarily on subjective symptoms, his credibility is a material factor and the inconsistencies and general lack of medical support for such claims prior to September 13, 2006, leads the undersigned to conclude that the claimant's allegations were not credible prior to that date.

(Tr. 22-23).

12

As detailed above, the medical record contains no evidence that prior to September 13, 2006, Plaintiff was impaired to an extent beyond that recognized by the ALJ.  Dr. Sheill's opinion that Plaintiff's limitations as of December 6, 2007, had been in existence for three years prior to that date enjoys no support in the record and, in fact, is contradicted by the medical evidence detailed above.  In sum, the ALJ properly evaluated Dr. Sheill's opinion.

        b.      Physician's Assistant David Wilkins' Opinion

At the outset of the administrative hearing, Plaintiff referred to a "sworn statement" that he was apparently seeking to admit into the record.  (Tr. 266-67).  Plaintiff failed to identify from whom the sworn statement in question was offered.  Plaintiff now asserts that the sworn statement in question, attached to his brief, was never made part of the record.  Plaintiff asserts that the ALJ's failure to incorporate the sworn statement in question constitutes a failure to properly develop the record.

Initially, the Court notes that Plaintiff has failed to establish that the sworn statement attached to his brief is, in fact, the sworn statement to which he made mention at the administrative hearing and which Plaintiff apparently attempted to submit into the record.  Plaintiff's failure to establish the proper evidentiary foundation for this argument is a sufficient basis to reject such.  More importantly though, even disregarding Plaintiff's foundational failure, an evaluation of the statement in question reveals that any error that may have occurred in omitting the statement in question was harmless.

The sworn statement in question was provided on September 13, 2007, by Physician's Assistant, David Wilkins, more than two years after the expiration of Plaintiff's insured status.

Wilkins asserted that as of September 13, 2007, Plaintiff was impaired to a degree that precluded employment.  Wilkins further asserted that Plaintiff was so impaired beginning in March 2005. First, as Wilkins is a Physician's Assistant he is not considered an acceptable medical source whose opinion is entitled to any deference.  *See* 20 C.F.R. §§ 404.1513, 404.1527.  Moreover, for the reasons articulated in the preceding section, the opinion that Plaintiff was impaired to an extent beyond that recognized by the ALJ is contradicted by the medical evidence, including Wilkins' own contemporaneous treatment notes.  (Tr. 184-234).

Thus, failure to include Wilkins' statement in the record is harmless as it does not support a different conclusion.  *See, e.g., Walls v. Astrue*, 282 Fed. Appx. 568, 571-72 (9th Cir., June 5, 2008) (ALJ's failure to fully develop the record found harmless where evidence in question would not have supported a different outcome).

c.      Other Documents

Plaintiff faults the ALJ for failing to include in the record a document manifesting his decision to modify the alleged onset date of his disability to April 4, 2004.  While the ALJ may not have included in the record the actual document in which Plaintiff asserted his desire to modify his alleged onset date, the ALJ, in her opinion, expressly recognized that Plaintiff modified his alleged onset date to April 4, 2004.  (Tr. 15).

Finally, Plaintiff also claims that the ALJ erred by failing to include in the record his response to Dr. Sheill's report concerning his December 6, 2007 examination of Plaintiff.  (Tr. 262).[3]

---

[3] The Court notes that this particular document is contained within the record because Plaintiff submitted to the Appeals Council on or about April 1, 2008.  (Tr. 259-62).

14

In her decision, the ALJ stated that Plaintiff was afforded ten days within which to submit "written comments" to Dr. Sheill's report, but that as of the date of her decision, February 4, 2008, "no response has been received." (Tr. 15). Plaintiff has submitted no evidence that he timely submitted to the ALJ any response to Dr. Sheill's report. Moreover, even if the ALJ erred by failing to incorporate into the record Plaintiff's response any such error is harmless for the reasons previously articulated.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: August 11, 2011                    _/s/ Ellen S. Carmody_____
                                         ELLEN S. CARMODY
                                         United States Magistrate Judge